**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**January 30, 2013**

# In the Court of Appeals of Georgia

A12A1839.   PARSONS   v.   STATE   FARM   MUTUAL   AUTOMOBILE INSURANCE COMPANY.

MCFADDEN, Judge.

Edith Parsons's son, Joshua Billups, was killed in a single-car accident. He owned the car but was riding as a passenger. Parsons brought a wrongful death action against the person who was driving. In connection with that action, she claimed uninsured/underinsured motorist (UM) benefits under a policy State Farm Mutual Automobile Insurance Company had issued to Billups's aunt, Lorraine Bolden.

The parties agree that the availability of UM coverage under the policy turns on whether, at the time of the accident, Billups resided primarily with Bolden. For the reasons explained below, there is no coverage if he resided primarily with her, but coverage is available if his aunt's home was Billups's secondary residence. The trial

court granted State Farm's motion for summary judgment. But because a genuine issue exists as to this material fact, State Farm is not entitled to summary judgment, and we reverse.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citation omitted.) *Spectera, Inc. v. Wilson*, 317 Ga. App. 64, 66 (730 SE2d 699) (2012).

So viewed, the evidence shows that Billups owned the car involved in the accident, but at the time he was riding in the backseat and another person was driving his car. Billups, who was in his early twenties at the time of the accident, had two residences. He lived in an apartment with his cousin (the son of his aunt, Lorraine Bolden). He also maintained a bedroom at Bolden's house. He had started living there several years earlier, when he moved to Georgia. Billups had a key to Bolden's house, received mail there, sometimes slept and ate meals there, and performed household chores there.

Lorraine Bolden had uninsured/underinsured motorist insurance under a policy, which provided that State Farm "will pay damages for bodily injury . . . an insured is legally entitled to collect from the . . . driver of an uninsured motor vehicle." The policy excluded from the definition of "uninsured motor vehicle" a vehicle "owned by or furnished for the regular use of . . . any relative."

Coverage extended to "any person entitled to recover damages because of bodily injury to an insured." The policy defined "insured" to include a "relative" of the first person named on the declarations page (in this case, Lorraine Bolden ).

Central to the analysis is the policy's definition of "relative," in particular its use in that definition of the word "primarily." It defined "relative" to mean "a person related to [the named insured] or [that person's] spouse by blood, marriage or adoption who resides *primarily* with [the named insured]." (Emphasis supplied.)

It is undisputed that Billups was an "insured" under Bolden's UM policy, as he was a relative who resided with her. His status as an insured was not affected by State Farm's attempt, in the policy definition of "relative," to limit coverage to relatives who resided *primarily* with the named insured. A UM policy issued in Georgia must provide at least the degree of coverage set forth in OCGA § 33-7-11. See OCGA § 33-7-11 (a) (1). That Code section mandates coverage for relatives

3

"while resident of the same household" – not just for those residing there primarily. OCGA § 33-7-11 (b) (1) (B).

But while a UM policy must provide at least the level of coverage set forth in OCGA § 33-7-11, it may provide greater coverage. See *Walker v. United Svcs. Automobile Assn.*, 205 Ga. App. 693 (423 SE2d 299) (1992). And while the policy's definition limiting "relatives" to those residing *primarily* with the named insured cannot reduce the coverage to less than what is mandated by statute, it can – and in this case does – broaden the coverage.

That definition affects whether Billups's car was an "uninsured motor vehicle" under the policy. OCGA § 33-7-11 allows insurers to exclude from the definition of "uninsured motor vehicle" vehicles owned by relatives residing with the named insured. OCGA § 33-7-11 (b) (1) (D). The State Farm policy, however, excludes from the definition of "uninsured motor vehicle" vehicles owned by relatives residing *primarily* with the named insured. Consequently, under the that policy, vehicles owned by relatives residing only secondarily with the named insured are "uninsured motor vehicles" under the policy terms. See generally *Baldwin v. State Farm Fire &Cas. Co.*, 264 Ga. App. 229, 230 (1) (590 SE2d 206) (2003) (acknowledging that insured could have more than one residence).

4

So Billips was an "insured," because he was a relative residing in Bolden's home – regardless whether her home was his primary or secondary residence. But the question whether her home was his primary or secondary residence is dispositive of whether his car was an "uninsured motor vehicle[]" under the policy terms. His car is covered if her home was his secondary residence, but excluded from coverage if Bolden's home was Billups's primary residence.

There is no dispute in this case that Billups resided at least part of the time with Bolden. The question is where he primarily resided. State Farm emphasizes the evidence showing Billups's ties to his aunt's house, such as the amount of time he spent there in activities such as eating, sleeping or doing chores, and the facts that he maintained a bedroom and received mail at the house. This evidence certainly could support a factfinder's conclusion that Billups resided primarily with his aunt. But contrary to State Farm's assertion, there was also evidence to support a finding that, at the time of the accident, Billups primarily resided in the apartment with his cousin, including his mother's deposition testimony that he lived in the apartment and Bolden's deposition testimony that, although her son (Billups's cousin) lived in the apartment, he too ate meals, did chores, received mail, kept a bedroom, and sometimes slept at her house.

5

A person's residence is a "mixed question[ ] of law and fact and [is] ordinarily one for the jury to determine." (Citation and punctuation omitted.) *Baldwin*, 264 Ga. App. at 230 (1). Parsons has pointed to evidence creating a genuine issue of fact about Billups's primary residence, which is material to determining whether his car was an "uninsured motor vehicle" under the State Farm policy and, accordingly, whether the policy's UM coverage applied. For this reason, summary judgment was not appropriate.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*